THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY; and KEVIN NTABO, an individual, | No. 2:25-cv-02333-RSM |
| Plaintiffs, | PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| WASHINGTON STATE CRIMINAL JUSTICE TRAINING CENTER, a state agency; and THE STATE OF WASHINGTON, | NOTE ON MOTION CALENDAR: DECEMBER 19, 2025 |
| Defendants. | ORAL ARGUMENT REQUESTED |

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND RELIEF REQUESTED ................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

    A.      Washington's Decentralized Correctional System ................................. 2

    B.      CJTC Certification of Corrections Officers .......................................... 3

    C.      King County's Hiring Practices ............................................................. 3

    D.      Threats of De-Certification and Operational Consequences .................. 4

    E.      This Lawsuit ........................................................................................... 5

III.    STATEMENT OF ISSUES ................................................................................... 5

IV.     EVIDENCE RELIED UPON ................................................................................ 6

V.      AUTHORITY ....................................................................................................... 7

    A.      Legal Standard ....................................................................................... 7

    B.      Plaintiffs Are Likely to Prevail on the Merits ....................................... 7

        1.      The Requirement Violates Equal Protection ................................ 7

            a.)      Strict scrutiny applies ...................................................... 7

            b.)      The Requirement fails strict and rational basis
                    scrutiny .............................................................................. 9

        2.      The Requirement Violates the Privileges and Immunities
            Clause ....................................................................................... 10

        3.      Federal Immigration Law Preempts the Requirement ............... 12

        4.      The Requirement Conflicts with the WLAD ........................... 13

    C.      Plaintiffs Will Suffer Irreparable Harm If the Immigration Status
        Requirement Is Not Blocked ................................................................ 14

    D.      The Balance of Equities Weigh in Plaintiffs' Favor, and a
        Preliminary Injunction Is in the Public Interest ................................. 16

VI.     CONCLUSION .................................................................................................... 17

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – i
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Am. Trucking Associations, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ................................................................. 15

*Ariz. Dream Act Coal. v. Brewer*,
  855 F.3d 957 (9th Cir. 2017) ...................................................... 10, 12, 13

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ............................................................ 10, 16

*Bernal v. Fainter*,
  467 U.S. 216 (1984)............................................................................... 7, 8

*Cabell v. Chavez-Salido*,
  454 U.S. 432 (1982)............................................................................... 8, 9

*City & Cnty. of San Francisco v. Trump*,
  779 F. Supp. 3d 1077 (N.D. Cal. 2025) ................................................... 16

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985).................................................................................... 9

*Dandamudi v. Tisch*,
  686 F.3d 66 (2d Cir. 2012)..................................................................... 7, 8

*Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*,
  426 U.S. 572 (1976).................................................................................... 7

*Familias Unidas por la Justicia, AFL-CIO v. United States Dep't of Lab.*,
  2024 WL 3276419 (W.D. Wash. July 2, 2024) ...................................... 16

*Graham v. Richardson*,
  403 U.S. 365 (1971)............................................................................ 12, 13

*Hecox v. Little*,
  104 F.4th 1061 (9th Cir. 2024) ............................................................... 15

*Plyler v. Doe*,
  457 U.S. 202 (1982).................................................................................. 12

*Sugarman v. Dougall*,
  413 U.S. 634 (1973).................................................................................... 7

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Toll v. Moreno*,
    458 U.S. 1 (1982)...................................................................................................... 12, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)............................................................................................................ 7

**State Cases**

*Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*,
    182 Wash. 2d 342 (2015)............................................................................................ 11

*Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*,
    196 Wash. 2d 506 (2020)............................................................................................ 11

*Ockletree v. Franciscan Health Sys.*,
    179 Wash. 2d 769 (2014)............................................................................................ 11

*Ralph v. City of Wenatchee*,
    34 Wash. 2d 638 (1949)........................................................................................ 11, 12

*Schroeder v. Weighall*,
    179 Wash. 2d 566 (2014)............................................................................................ 11

*Simpson v. State*,
    26 Wash. App. 687 (1980).......................................................................................... 11

*State v. Osman*,
    157 Wash. 2d 474 (2006)............................................................................................ 11

*Xieng v. Peoples Nat. Bank of Wash.*,
    120 Wash. 2d 512 (1993)............................................................................................ 14

**State Statutes**

Wash. Rev. Code § 10.93.020(4) ...................................................................................... 2

Wash. Rev. Code § 43.101.010...................................................................................... 3, 8

Wash. Rev. Code § 43.101.010(13) ............................................................................... 2, 9

Wash. Rev. Code § 43.101.010(8) ..................................................................................... 2

Wash. Rev. Code § 43.101.020(2) ..................................................................................... 3

Wash. Rev. Code § 43.101.080(2), (15) ............................................................................ 3

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Wash. Rev. Code § 43.101.095.................................................................................... 3

Wash. Rev. Code § 43.101.095(2)(b)(v).......................................................... 1, 2, 3, 8

Wash. Rev. Code § 49.60.010.................................................................................. 14

Wash. Rev. Code § 49.60.020.................................................................................. 14

Wash. Rev. Code § 49.60.030(1)(a).......................................................................... 14

Wash. Rev. Code § 70.48.180.................................................................................... 2

Wash. Rev. Code § 72.02.230.................................................................................... 2

Wash. Rev. Code § 72.09.050.................................................................................... 2

Wash. Rev. Code § 9.94.716...................................................................................... 9

Wash. Const. art. I, § 12......................................................................................... 10

## State Regulations

Wash. Admin. Code § 139-06-010(1)(a)(i)................................................................ 3

## Other Authority

Wash. Senate Bill Report, SSB 6157 (2024) ........................................................... 10

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – iv
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.    INTRODUCTION AND RELIEF REQUESTED

Despite federal and state constitutional protections against discrimination based on immigration status and Washington's strong public policy protecting immigrants' right to work in Washington,[1] Wash. Rev. Code § 43.101.095(2)(b)(v) unlawfully discriminates against lawfully present, work-authorized immigrants. This statute governing who local governments may employ as corrections officers draws an arbitrary line: it allows some immigrants to serve their communities while excluding others solely based on immigration status. This discrimination violates the guarantees of equality and fairness in the U.S. and Washington Constitutions and codified in the Washington Law Against Discrimination ("WLAD"), and also intrudes on an area preempted by federal law.

Under Wash. Rev. Code § 43.101.095(2)(b)(v), King County ("County") may not hire certain lawfully present, work-authorized immigrants as corrections officers, positions involving operational duties essential to the safe and humane operation of its detention facilities. This prohibition serves no legitimate purpose, deprives the County of qualified officers, undermines operational stability, and jeopardizes effective facility functioning—harming staff, inmates, and the broader community.

The statute's inconsistency underscores its arbitrariness. Wash. Rev. Code § 43.101.095(2)(b)(v) permits local governments to hire only Deferred Action for Childhood Arrivals ("DACA") recipients and lawful permanent residents ("LPRs"), while barring all other work-authorized immigrants. Meanwhile, the Washington State Department of Corrections

---

[1] Keep Wash. Working Act, Laws of 2019, ch. 440, § 1.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 1
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

("DOC") may employ these same individuals without restriction. This double standard cannot withstand constitutional scrutiny.

The County and affected corrections officer Kevin Ntabo therefore seek a preliminary injunction preventing Defendants—the Washington State Criminal Justice Training Commission ("CJTC") and the State of Washington ("State")—from enforcing Wash. Rev. Code § 43.101.095(2)(b)(v), including decertifying or taking other adverse action against County corrections officers based on immigration status, pending a final merits determination. Without such relief, Defendants' enforcement will continue to cause irreparable harm to the County and its public servants.

## II.      STATEMENT OF FACTS

### A.      Washington's Decentralized Correctional System

Washington law provides for a decentralized criminal justice system, dividing policing and detention responsibilities among state, county, and municipal governments. Local detention facilities, including those in King County, hold individuals awaiting trial, serving misdemeanor or felony sentences of up to one year, or being temporarily detained. Wash. Rev. Code § 70.48.180–.190, .400. These facilities are distinct from state prisons operated by DOC for people serving felony sentences over one year. Wash. Rev. Code § 72.02.230, 72.09.050.

State law differentiates between peace officers and corrections officers. Peace officers are law enforcement personnel with general arrest powers who enforce criminal laws. Wash. Rev. Code § 43.101.010(13) (incorporating Wash. Rev. Code § 10.93.020(4)). Corrections officers, by contrast, serve in local detention facilities, performing custodial functions to maintain safety and security. Wash. Rev. Code § 43.101.010(8). Corrections officers do not exercise broad arrest

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 2
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

authority. Larsen Decl. ¶ 6. Nor do they determine who is admitted to, detained in, or released from facilities. *Id*. They must follow detailed procedures and policies and are subject to supervision by their chain of command. Eltayeb Decl. ¶ 5.

**B.    CJTC Certification of Corrections Officers**

CJTC sets and enforces minimum employment, training, and certification standards for corrections officers. Wash. Rev. Code § 43.101.020(2). It oversees background investigations, issues certifications, and may revoke them. Wash. Rev. Code § 43.101.080(2), (15).

Local governments must complete background investigations before making nonconditional offers for corrections officer positions. Wash. Rev. Code § 43.101.095; Wash. Admin. Code § 139-06-010(1)(a)(i). This includes verifying "immigrant or citizenship status as either a citizen of the United States of America, lawful permanent resident, or deferred action for childhood arrivals recipient." Wash. Rev. Code § 43.101.095(2)(b)(v) ("Immigration Status Requirement"). After completing investigations, local governments report findings to CJTC, which provides training and certifies the person to work as a corrections officer. Wash. Admin. Code § 139-06-010(1). The Requirement does not apply to state corrections personnel. *See* Wash. Rev. Code § 43.101.010.

**C.    King County's Hiring Practices**

King County Department of Adult and Juvenile Detention ("DAJD") operates two adult detention facilities, the largest county-run jail system in Washington, with roughly 14,000 bookings annually and a daily population of 1,300 inmates. Larsen Decl. ¶ 4; Nance Decl. ¶ 5.

DAJD's mission is to operate safe, secure, and humane detention facilities while advancing public safety. Larsen Decl. ¶ 3. Guided by the County's "True North" values, DAJD recruits a

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 3
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

diverse workforce, including immigrants, women, people of color, LGBTQ+ individuals, veterans, and people with disabilities. *Id.* ¶ 7.

Corrections officer applicants undergo a rigorous hiring process, including background checks, interviews, and polygraph and psychological assessment. *Id.* ¶ 14. DAJD also verifies each applicant's work authorization through the federal I-9 process. Nance Decl. ¶ 9. Officers must be at least 21 years old, a high school graduate or GED holder, and having a valid Washington driver's license. Larsen Decl. ¶ 13.

The COVID-19 pandemic caused severe DAJD staffing shortages—vacancies reached 29%, with two officers lost for every one hired—forcing operational cutbacks. *Id.* ¶¶ 8–9; Nance Decl. ¶ 6. While recruitment and retention efforts have reduced vacancies, staffing remains below target. Nance Decl. ¶ 8.

Due to an administrative error, DAJD did not apply the Immigration Status Requirement and hired 38 lawfully present, work-authorized immigrants who are neither U.S. citizens, LPRs, nor DACA recipients ("Impacted COs"). *Id*. ¶ 14; Larsen Decl. ¶ 16. Hired in good faith, they are now essential to operations. Nance Decl. ¶ 12.[2]

**D.    Threats of De-Certification and Operational Consequences**

In October 2025, CJTC told DAJD Director Nance the agency intended to ask Impacted COs to voluntarily surrender their certifications or face decertification proceedings. *Id*. ¶ 15. It then required DAJD to provide a list of the Impacted COs toward carrying out this threat. *Id*. ¶ 16. CJTC immediately removed four corrections officers from certification training. *Id.*

---

[2] None of the Impacted COs misrepresented their immigration status, nor were they informed that a particular status was necessary to work in their positions. *Id*. ¶ 14. This error was solely DAJD's responsibility. *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 4
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Loss of the Impacted COs would be disastrous. Larsen Decl. ¶ 23. It would erase staffing gains, push vacancies above 20%, increase mandatory overtime, accelerate burnout, and compromise safety and stability. *Id.* ¶ 24. Operational changes would likely include consolidated housing units, restricted dayrooms, limited visitation (including by lawyers), and delayed court and medical transports. *Id.* ¶ 25. These conditions endanger staff and inmates, impede law-enforcement partners, and impact public safety. *Id.* ¶ 26.

The Impacted COs are homeowners, parents, and committed public servants. Ntabo Decl. ¶¶ 6–10; Eltayeb Decl. ¶¶ 10–13. Some are adjusting their status to become LPRs. Eltayeb Decl. ¶ 11. Losing their jobs and certifications would devastate them, their families, and their communities.

**E.      This Lawsuit**

To prevent these harms, the County and Officer Ntabo (one of the Impacted COs) initially filed this action in King County Superior Court for a declaratory judgment that the Immigration Status Requirement is unlawful and to enjoin Defendants from enforcing it. Defendants removed this case to this Court. Dkt. # 1.

### III.      STATEMENT OF ISSUES

1.      The Immigration Status Requirement permits U.S. citizens, LPRs, and DACA recipients—but excludes all other lawfully present, work-authorized immigrants—from serving as corrections officers at local detention facilities. Does this Requirement violate the Equal Protection Clause?

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 5
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

2.    Does the Requirement violate the Privileges and Immunities Clause of the Washington Constitution by arbitrarily denying qualified, work-authorized immigrants the privilege of employment as corrections officers afforded to similarly situated residents?

3.    The Requirement excludes certain noncitizens from serving as corrections officers despite federal law authorizing them to work in the U.S. Is the Requirement an impermissible intrusion on the federal government's exclusive authority to classify noncitizens and preempted by federal immigration law?

4.    The WLAD, chapter 49.60 Wash. Rev. Code, prohibits employment discrimination based on immigration status. CJTC's actions threaten to disqualify lawfully present, work-authorized immigrants from continuing employment as County corrections officers. Do the CJTC's actions violate the WLAD?

5.    CJTC has taken substantial actions against DAJD and its Impacted COs to force them to surrender their certifications or face decertification proceedings and enforcement of the Requirement would prevent the Impacted COs from working in their field and interrupt DAJD jail operations. Is this irreparable harm sufficient to support a preliminary injunction?

6.    CJTC's threatened actions would upend the Impacted COs' lives and interfere with DAJD's jail operations, which are critical to safety and welfare of the community—with no benefit to the public beyond compliance with an unconstitutional law. Do the balance of the equities tip in favor of Plaintiffs and is a preliminary injunction in the public interest?

## IV.    EVIDENCE RELIED UPON

County Plaintiffs rely upon the pleadings and files of record together with the Declarations of Kevin Ntabo, Allen Nance, Steve Larsen, Mohamed Eltayeb, and David Hackett.

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

## V.    AUTHORITY

2

### A.    Legal Standard

3

4    A preliminary injunction is warranted where the moving party establishes: (1) it is likely

to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the

5

balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter*

6

*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors merge when, as

7

8    here, the nonmoving party is the government. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

9    All of these factors strongly favor Plaintiffs.

10

### B.    Plaintiffs Are Likely to Prevail on the Merits

11

#### 1.    The Requirement Violates Equal Protection

12

##### a.)    *Strict scrutiny applies*

13

State laws that discriminate based on immigration status are generally subject to strict

14

scrutiny. *Bernal v. Fainter*, 467 U.S. 216, 219 (1984). Applying this standard, the U.S. Supreme

15

16    Court has repeatedly struck down state laws denying lawfully present noncitizens equal access to

public employment, benefits, and professional opportunities. *See, e.g.*, *Sugarman v. Dougall*, 413

17

18    U.S. 634, 643 (1973); *Bernal*, 467 U.S. at 217–18; *Examining Bd. of Eng'rs, Architects &*

19    *Surveyors v. Flores de Otero*, 426 U.S. 572, 601 (1976); *see also Dandamudi v. Tisch*, 686 F.3d

20    66, 79 (2d Cir. 2012) (striking down New York law limiting pharmacist licensing to citizens and

21    LPRs as discriminatory against other work-authorized noncitizens).[3]

22

23

_____

24    [3] Unlawful alienage discrimination includes unequal treatment between citizens and
noncitizens, as well as between noncitizens who are similarly situated but with different

25    immigration status (e.g., DACA recipients and lawfully present, work-authorized immigrants
like the Impacted COs). *Dandamudi*, 686 F.3d at 79.

26

27    PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 7
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The U.S. Supreme Court recognizes a "narrow" political-function exception, which applies rational basis to state laws excluding noncitizens from positions "intimately related to the process of democratic self-government." *Bernal*, 467 U.S. at 220. Courts apply a two-part test: (1) law must not be over- or underinclusive, meaning the roles must genuinely implicate democratic self-governance; and (2) the excluded positions must involve discretionary authority over sovereign functions, such as policymaking, law enforcement, or electoral governance. *Cabell v. Chavez-Salido*, 454 U.S. 432, 440–41 (1982). The exception is applied sparingly and does not reach this case.

First, the Immigration Status Requirement is internally inconsistent. It permits citizens, LPRs, and DACA recipients to serve as corrections officers, yet excludes other work-authorized immigrants, including people with Temporary Protected Status, pending asylum claims, or humanitarian parole. Wash. Rev. Code § 43.101.095(2)(b)(v); Ntabo Decl., ¶ 6. This patchwork approach is not calibrated to capture those with the strongest legal and political ties to Washington or the U.S. Further, the requirement is critically under-inclusive, as it does not apply to the State's own correctional officers. Wash. Rev. Code § 43.101.010. These internal contradictions "belie the State's claim that it is only attempting to ensure that an important function of government be in the hands of those having the fundamental legal bond of citizenship." *Cabell*, 454 U.S. at 442 (cleaned up).

Second, corrections officers do not fall within the narrow category of positions implicating democratic self-governance. Corrections officers operate under strict protocols and carry out routine operational tasks. Larsen Decl. ¶ 6; Eltayeb Decl. ¶ 5. Their responsibilities include overseeing daily routines, booking and releasing inmates, coordinating visitation, and monitoring

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 8
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

surveillance. *Id*. These duties are essential to jail operations but do not involve independent policymaking or the exercise of sovereign discretion.

This contrasts sharply with California's probation officers in *Cabell*, who exercised "broad discretion to judge the progress of rehabilitation in individual cases" and the power to arrest, release, and recommend revocation of probation against persons who were in the community. 454 U.S. at 445–47. The closest analogy in Washington is state community corrections officers, who enjoy highly similar powers. Wash. Rev. Code § 9.94.716 (authorizing community corrections officers to suspend a person's community custody status and arrest them). Similarly, peace officers under Washington law have general arrest powers and enforce criminal laws in the community. Wash. Rev. Code § 43.101.010(13). The same cannot be said of corrections officers, whose responsibilities are predominantly custodial and governed by detailed protocols and oversight. Thus, the exception is inapplicable; strict scrutiny governs.

### b.) *The Requirement fails strict and rational basis scrutiny*

The Requirement fails even rational basis review, which requires that a law be "rationally related to a legitimate government interest," *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 440 (1985), and thus necessarily fails strict scrutiny as well.

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ("*ADAC I*") is instructive. There, the Ninth Circuit affirmed a preliminary injunction against Arizona's policy denying driver's licenses to DACA recipients, but not other work-authorized noncitizens, as unlikely to survive even rational basis review. *Id.* at 1066. The court rejected all four justifications—including potential legal liability, improper benefits, and DACA recipients' temporary status—as

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 9
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

unsupported by evidence. *Id.* The court noted that DACA's temporary status "applie[d] with equal force to" other noncitizens, demonstrating the arbitrary nature of the distinction. *Id.* at 1065.[4]

The Immigration Status Requirement similarly permits some noncitizens while excluding others with equivalent work authorization, with no connection to job duties or public safety. The Legislature offered no justification. To the contrary, the 2024 bill expanding eligibility to DACA recipients recognized that "all individuals legally authorized to work under federal law . . . are eligible for employment unless otherwise prohibited." Laws of 2024, ch. 330, § 11(1)(g); *see also* Wash. Senate Bill Report at 4, SSB 6157 (2024) ("Those entitled to work in this state with a work permit should also be able to work in civil service positions.").

### 2.    The Requirement Violates the Privileges and Immunities Clause

Plaintiffs are also likely to succeed because the Requirement violates the Privileges and Immunities Clause of the Washington Constitution, which requires that all "privileges or immunities" shall "equally belong to all citizens, or corporations." Wash. Const. art. I, § 12. Washington courts have held this protection "applies to resident aliens as well as citizens." *Simpson v. State*, 26 Wash. App. 687, 692 (1980). Its scope is "substantially identical" to the Fourteenth Amendment, which guarantees noncitizens equal protection. *State v. Osman*, 157 Wash. 2d 474, 483 n.12 (2006).

---

[4] The Ninth Circuit later affirmed the district court's permanent injunction on the ground that Arizona's policy was preempted by federal law, invoking the constitutional avoidance doctrine. *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 969, 971 (9th Cir. 2017) ("*ADAC II*"). The court nonetheless "remain[ed] of the view, articulated in our preliminary injunction opinion, that Arizona's policy may well fail even rational basis review," and once again rejected the supposed government interests Arizona identified. *Id.* at 969.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 10
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Courts employ a two-step analysis: first, courts determine whether the challenged law implicates a privilege or immunity; second, whether the Legislature had a "reasonable ground" for the distinction. *Ockletree v. Franciscan Health Sys*., 179 Wash. 2d 769, 776 (2014).

Relevant here, the right to "carry on business" in Washington is a "long-recognized privilege under [the Washington] constitution." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wash. 2d 342, 360 (2015) (cleaned up). In *Ralph v. City of Wenatchee*, 34 Wash. 2d 638, 641 (1949), the Court struck down a city ordinance that imposed licensing fees only on nonresident photographers, holding that it unlawfully advantaged one class of business over another of the same type. *See also Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wash. 2d at 360 ("A 'privilege' is an exception from a regulatory law that benefits certain businesses at the expense of others.").

At step two, courts ask whether the Legislature had a reasonable ground for the distinction, a test that is "more exacting than rational basis review." *Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 196 Wash. 2d 506, 523 (2020). "The court will scrutinize the legislative distinction to determine whether it in fact serves the legislature's stated goal." *Id.* Courts will not invent justifications for legislative choices. *Schroeder v. Weighall*, 179 Wash. 2d 566, 574 (2014).

The Immigration Status Requirement implicates a protected privilege, yet no reasonable ground justifies the distinction. It bars certain lawfully present, work-authorized immigrants from employment as correctional officers while permitting citizens, LPRs, and DACA recipients to serve—excluding an entire class from a field of work based solely on immigration status. As in *Ralph*, this is discrimination in the right to pursue a lawful occupation, not a peripheral employment condition. Nor can the Requirement survive step two. *See* Sect. V.B.1.b, *supra*

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 11
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(Requirement fails less demanding rational basis review). Thus, the Requirement violates the Privileges and Immunities Clause.

### 3. Federal Immigration Law Preempts the Requirement

The Immigration Status Requirement must also be set aside because it conflicts with federal immigration law. The U.S. Supreme Court has repeatedly recognized, when it comes to immigration, the federal government's authority is at its apex and the authority of the states its nadir. *Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("The States enjoy no power with respect to the classification of aliens" because the power to treat categories of noncitizens differently is "committed to the political branches of the Federal Government." (quotation marks and citations omitted)). The source and scope of federal preemption in the context of immigration is thus "unique," and "'neither a clear encroachment on exclusive federal power to admit aliens nor a clear conflict with a specific congressional purpose' is required in order for federal law to preempt state regulations of immigrants." *ADAC II*, 855 F.3d at 972 (quoting *Toll v. Moreno*, 458 U.S. 1, 11 n.16 (1982)).

In *Graham v. Richardson*, 403 U.S. 365 (1971), for example, the U.S. Supreme Court concluded that a state's withholding of welfare benefits from resident noncitizens, although not expressly in conflict with federal law, impermissibly intruded on federal authority because Congress had "not seen fit to impose any burden or restriction on aliens who become indigent after their entry into the United States," but rather had chosen to afford "lawfully admitted resident aliens . . . the full and equal benefit of all state laws for the security of persons and property," *id.* at 377, 378. The state could not impose an "auxiliary burden[] upon the entrance or residence of

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 12
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

aliens" that was never contemplated by Congress. *Id.* at 379; s*ee also Toll*, 458 U.S. at 16–17 (holding preempted imposition of tuition charges at a state university based on immigration status).

The Ninth Circuit has followed suit. In *ADAC II*, the court held preempted an Arizona policy that prohibited DACA recipients from using employment authorization documents to show proof of authorized presence under federal law to obtain a driver's license but allowed other noncitizens to do so. 855 F.3d at 964–65. Arizona law, the court held, impermissibly intruded on federal authority because it developed its "**own** definition of 'authorized presence,' one that neither mirror[ed] nor borrow[ed] from the federal immigration scheme." *Id.* at 973.

The Immigration Status Requirement similarly encroaches on—and thus must give way to—federal law. Under the Immigration and Nationality Act, the federal government distinguishes between noncitizens who are authorized to work in the U.S. and those who are not. In disregard of this distinction, the Requirement uses "its own notion" of work authorization and the roles to which it applies, distinguishing between citizens, LPRs, and DACA recipients (who are eligible to serve as corrections officers) and all other noncitizens (who are ineligible even though some can lawfully work in the United States). *ADAC II*, 855 F.3d at 975. The Requirement's "auxiliary burden" on certain noncitizens was not contemplated by Congress, *Graham*, 403 U.S. at 369, and is therefore "preempted by the exclusive authority of the federal government" to "classify noncitizens," *ADAC II*, 855 F.3d at 975.

### 4.    The Requirement Conflicts with the WLAD

The WLAD declares that practices discriminating against any Washington inhabitants on the basis of, among other categories, citizenship or immigration status, "threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

democratic state." Wash. Rev. Code § 49.60.010. It further establishes "[t]he right to obtain and hold employment without discrimination" based on citizenship or immigration status. Wash. Rev. Code § 49.60.030(1)(a).

The Immigration Status Requirement is fundamentally at odds with the WLAD because it mandates that local governments, including the County, discriminate in hiring corrections officers based solely on immigration status. Where two statutes are incompatible, one must yield to the other. Here, the WLAD prevails because it reflects a constitutional prohibition on discrimination and "embodies a public policy of the highest priority." *Xieng v. Peoples Nat. Bank of Wash.*, 120 Wash. 2d 512, 521 (1993) (quotation marks and citation omitted). Further, although the WLAD allows differential treatment where authorized by federal or state law, regulation, or contract, Wash. Rev. Code § 49.60.020, that exception does not apply here because the Immigration Status Requirement violates both the United States and Washington Constitutions. Accordingly, the Requirement must be set aside.

**C.    Plaintiffs Will Suffer Irreparable Harm If the Immigration Status Requirement Is Not Blocked**

Plaintiffs will suffer irreparable harm if the Immigration Status Requirement is not enjoined. CJTC has indicated the Impacted COs must voluntarily surrender their corrections-officer certifications or face formal enforcement actions. Nance Decl. ¶ 15. CJTC has taken substantial actions toward this purpose and already disqualified four officers from certification by removing them from training. *Id.* ¶ 16. Any so-called "voluntary" surrender is coerced under threat of career-ending consequences. The loss of certification—without which officers cannot lawfully perform their duties—constitutes imminent, not hypothetical, harm.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 14
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

CJTC's communications and actions demonstrate its intent to act immediately. Six of the Impacted COs have already been prevented from completing training, including four who were sent home midway through the program. Larsen Decl. ¶ 18. These ongoing enforcement measures have immediate and irreversible effects on the affected officers, their employment, and the County's ability to staff jails safely and lawfully. Because the threat is concrete, direct, and tied to fundamental legal and employment rights, it constitutes irreparable harm sufficient to support preliminary injunctive relief. *See, e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024) (deprivation of constitutional rights constitutes irreparable harm); *see also Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009) (being forced into a "Hobson's choice" between two detrimental options is irreparable harm).

Moreover, the loss of the Impacted COs would severely impede DAJD's ability to maintain safe and humane jail operations. Their removal would reverse recent progress addressing chronic staffing shortages. Since the pandemic, there have been "catastrophic" corrections officer shortages. Larsen Decl. ¶ 8. DAJD was forced to curtail visitation and programming, restrict movement, and rely on extensive overtime, heightening safety concerns and staff stress. Nance Decl. ¶¶ 6–7; Eltayeb Decl. ¶ 9. Although DAJD has reduced vacancies by half since 2022, losing these officers would likely require renewed cutbacks and increased overtime, worsening turnover. Nance Decl. ¶ 8; Larsen Decl. ¶ 24. DAJD would also lose officers with crucial cultural and linguistic skills, Eltayeb Decl. ¶ 12, and incur significant recruiting and training costs, Larsen Decl. ¶¶ 11, 15, 23. *See City & Cnty. of San Francisco v. Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. 2025) (finding "irreparable injury in the form of budgetary uncertainty, deprivation of

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

constitutional rights, and undermining trust between the Cities and Counties and the communities they serve"; collecting cases).

Officer Ntabo's individual harm is even more serious. Officer Ntabo supports his family of five and depends on his position for income, tuition, and health insurance. Ntabo Decl. ¶¶ 6–10. The Requirement's enforcement threatens his livelihood and family stability, as well as that of other Impacted COs. Eltayeb Decl. ¶¶ 11, 13; Larsen Decl. ¶ 20; *see ADAC I*, 757 F.3d at 1068 (a plaintiff's loss of opportunity to pursue a chosen profession constitutes irreparable harm); *see also Familias Unidas por la Justicia, AFL-CIO v. United States Dep't of Lab.*, 2024 WL 3276419, at *8 (W.D. Wash. July 2, 2024) ("[L]oss of a job can be irreparable harm when an employee is so poor that if [they] stopped working, the consequences would be severe.") (quotation marks and citation omitted).

Immediate injunctive relief is necessary to prevent these harms, which endanger the affected employees and the safe, stable operation of DAJD facilities.

## D.     The Balance of Equities Weigh in Plaintiffs' Favor, and a Preliminary Injunction Is in the Public Interest

The balance of equities and public interest factors, which merge here, also strongly favor preliminary relief. The Court should enjoin enforcement of the Requirement pending litigation because both the public and the County have a compelling interest in ensuring that DAJD operates lawfully and safely. *See ADAC I*, 757 F.3d at 1069 (establishing a likelihood that a policy violates the U.S. Constitution also "establish[es] that both the public interest and the balance of the equities favor a preliminary injunction"). There is no evidence that a preliminary injunction would harm the public: these COs are lawfully present, fully vetted, and continue to perform their duties without endangering the public or undermining any legitimate state interest. Larsen Decl. ¶¶ 17,

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

26. Indeed, these COs are highly committed public servants, having worked, on average, 13% more overtime than other DAJD officers in 2025. *Id.* ¶ 22. In contrast, sudden loss of the Impacted COs would, in the words of a DAJD Facility Commander, "have disastrous operational consequences for the adult detention facilities and the residents and staff within the facilities," jeopardizing the safety of inmates, officers, and the public alike. Eltayeb Decl. ¶ 8.

## VI.    CONCLUSION

Accordingly, this Court should preliminarily enjoin enforcement of the Immigration Status Requirement. The Requirement arbitrarily discriminates against lawfully authorized workers, prevents them from engaging in their profession, conflicts with federal immigration law and the WLAD, and threatens DAJD facilities' safety and operational integrity. Immediate relief is necessary to protect corrections officers, inmates, and the public from irreparable harm.

I certify that this memorandum contains 4,450 words, in compliance with the Local Civil Rules.

DATED this 21st day of November, 2025.

PACIFICA LAW GROUP LLP

*s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946
Kevin Kennedy, WSBA #55687
Eugene Lee, WSBA #61190

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
T: 206-245-1700
F: 206-245-1750
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 17
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Kevin.Kennedy@PacificaLawGroup.com
Eugene.Lee@PacificaLawGroup.com

*Attorneys for Plaintiffs King County and Kevin Ntabo*

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 18
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on November 21st, 2025, I served a true and correct copy of the

3

foregoing document on the following parties by the method(s) indicated below:

4

| | |
|---|---|
| Emma Grunberg<br>Kelly A. Paradis<br>*Deputy Solicitors General*<br><br>Solicitor General's Office<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>emma.grunberg@atg.wa.gov<br>kelly.paradis@atg.wa.gov<br><br>*Attorneys for Defendants Washington State*<br>*Criminal Justice Training Center and the*<br>*State of Washington* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

5

6

7

8

9

10

11

12

13

    I declare under penalty of perjury under the laws of the United States and the State of

14

Washington that the foregoing is true and correct.

15

16

    DATED this 21st day of November, 2025.

17

18

                    */s/ Sabrina Mitchell*_____

Sabrina Mitchell

19

Litigation Assistant

Pacifica Law Group LLP

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION – 19
No. 2:25-cv-02333-RSM

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750