Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY; and KEVIN NTABO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON STATE CRIMINAL JUSTICE TRAINING CENTER, a state agency; and THE STATE OF WASHINGTON,<br><br>Defendants. | No. 2:25-cv-02333-RSM<br><br>[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |

This matter came before the Court on Plaintiffs King County (the "County") and Kevin Ntabo's Motion for Preliminary Injunction (the "Motion"). The Court has considered the Motion, the supporting declarations, and any responses and replies thereto, and the other pleadings and papers filed in this action. Based on the foregoing, the Court makes the following Findings of Fact and Conclusions of Law.

## I.   FINDINGS OF FACT

1. Defendant Washington State ("State") operates a decentralized criminal justice system in which policing and detention functions are divided among state, county, and municipal agencies. Local detention facilities, including those the County administers, hold individuals awaiting trial, serving misdemeanor sentences, or temporarily detained. RCW 70.48.180-.190.,

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

.400. These facilities are distinct from state prisons operated by DOC for people serving felony sentences. RCW 72.02.230, 72.09.050.

2. State law differentiates between peace officers and corrections officers. Peace officers are law enforcement personnel with general arrest powers who enforce criminal laws in the community. RCW 43.101.010(13) (incorporating RCW 10.93.020). Corrections officers, by contrast, serve in local detention facilities, performing custodial functions to maintain safety, security, and order. RCW 43.101.010(8).

3. Corrections officers do not exercise broad arrest authority. Larsen Decl. ¶ 6; Eltayeb Decl. ¶ 5. Nor do they determine who is admitted to, detained in, or released from detention facilities. *Id.* They must follow detailed procedures and policies and are subject to supervision by their chain of command. Eltayeb Decl. ¶ 5.

3. Defendant Washington State Criminal Justice Training Center ("CJTC") is the Washington state agency responsible for establishing and administering standards and processes for certification, suspension, and decertification of peace officers and corrections officers. As relevant here, CJTC issues certifications and provides training for corrections officers. CJTC is also authorized under RCW 43.101.105 to deny or revoke an officer's certification for various reasons. For example, CJTC can revoke a certification that was issued due to an administrative error on the part of CJTC.

4. Local governments must complete background investigations before making nonconditional employment offers to corrections officers. RCW 43.101.095; WAC 139-06-010(1)(a)(i). This includes verifying "immigrant or citizenship status as either a citizen of the United States, lawful permanent resident, or deferred action for childhood arrivals recipient." RCW 43.101.095(2)(b)(v) ("Immigration Status Requirement"). The Requirement does not apply

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 2

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to state corrections personnel. RCW 43.101.010. After completing investigations, local governments report findings to CJTC, which issues certifications. WAC 139-06-010(1).

5. King County Department of Adult and Juvenile Detention ("DAJD") operates two adult detention facilities, the largest county-run jail system in Washington, with roughly 14,000 bookings annually and a daily population of 1,300 inmates. Larsen Decl. ¶ 4; Nance Decl. ¶ 5. Corrections officer applicants undergo a rigorous hiring process, including background checks, interviews, and polygraph and psychological assessment. Nance Decl. ¶ 9. In addition, King County's hiring process includes a review of documents under the federal I-9 process verifying that the applicant is permitted to work in the United States. *Id*. Minimum qualifications include being at least 21 years old, holding a high school diploma or GED, and possessing a valid Washington driver's license. Larsen Decl. ¶ 13. No specialized skills or prior experience are required. *Id.*

6. The COVID-19 pandemic caused severe DAJD staffing shortages—vacancies reached 29%, with two officers lost for every one hired—forcing operational cutbacks. Larsen Decl. ¶ 9; Nance Decl. ¶ 6. While recruitment and retention efforts have reduced vacancies, staffing remains below target. Nance Decl. ¶ 8.

7. Due to an administrative error, DAJD did not apply the Immigration Status Requirement and hired 38 lawfully present, work-authorized immigrants who are neither U.S. citizens, legal permanent residents ("LPRs"), nor deferred action for childhood arrivals ("DACA") recipients (collectively, the "Impacted COs"). Larsen Decl. ¶ 16. Hired in good faith, they are now essential to operations at DAJD's adult detention facilities. Nance Decl. ¶¶ 11–12. None of the Impacted COs misrepresented their immigration status, nor were they informed that a particular

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 3

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

status was necessary to work in the that position. *Id.* ¶ 14. This error was solely the responsibility of DAJD. *Id.*

8. Of the 38 Impacted COs, 32 have completed the training required by the CJTC and passed appropriate testing based on that training. *Id.* ¶ 17. These 32 officers have all been certified by the CJTC as corrections officers. *Id.* An additional four corrections officers were in training with CJTC and removed from training due to the Immigration Status Requirement. *Id.* ¶ 18. Two more corrections officers on protected leave are awaiting CJTC training, but would not qualify to serve due to the Immigration Status Requirement. *Id.*

9. Plaintiff Kevin Ntabo ("Officer Ntabo") is a certificated corrections officer employed by the County. Ntabo Decl. ¶ 2. He immigrated to the United States though sponsorship by his wife, a United States citizen, and his application for adjustment of status to become an LPR has been pending for more than 1,000 days. *Id.* ¶ 6. He has a U.S. Employment Work Authorization Document. *Id.* ¶ 4. Officer Ntabo is one of the 38 Impacted COs. *Id.* ¶ 3.

10. In October 2025, CJTC informed DAJD that affected employees will be asked to voluntarily surrender their certifications and, if they decline, will face formal decertification proceedings. Nance Decl. ¶ 15. CJTC has already begun enforcing this action, immediately removing several employees from the Corrections Officer Academy and indicating that others may soon be subject to the same consequence. *Id.* ¶ 16.

11. If DAJD is forced to suspend or terminate the Impacted COs, the adult detention facilities (and the residents and staff within them) would suffer substantial operational consequences. Loss of these officers would erase staffing gains, push vacancies above 20%, increase mandatory overtime, accelerate burnout, and compromise safety and stability. Larsen Decl. ¶¶ 23–24. Operational changes would likely include consolidated housing units, restricted

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 4

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

dayrooms, limited visitation (including lawyers), and delayed court and medical transports. *Id.* ¶ 25. These conditions endanger staff and inmates, impede law-enforcement partners, and compromise public safety. *Id.* ¶ 26. The Impacted COs are integral to the community: homeowners, parents, and committed public servants. Ntabo Decl. ¶¶ 6–10; Eltayeb Decl. ¶¶ 10–13. Some are adjusting their status to become LPRs. Eltayeb Decl. ¶ 11. Losing their jobs and certifications would gravely impact them, their families, and the communities they serve. Ntabo Decl. ¶¶ 8–10 (describing consequences for ability to support self and family)

## II.  CONCLUSIONS OF LAW

1. The Court has jurisdiction over Defendants and the subject matter of this action, and venue is proper.

2. To obtain a preliminary injunction, Plaintiffs must show: (1) they are likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors merge when the nonmoving party is the government. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

3. Plaintiffs have demonstrated that there is a strong likelihood that they will prevail on the merits of their claims that the Immigration Status Requirement (1) violates the Equal Protection Clause of the United States Constitution; (2) violates the privileges and immunities clause of the Washington Constitution; (3) is preempted by federal immigration law; and (4) violates the Washington Law Against Discrimination (WLAD).

    a. Plaintiffs have demonstrated a strong likelihood that the Immigration Status Requirement violates the federal Equal Protection Clause because it unlawfully discriminates on the basis of immigration status without

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 5

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

sufficient countervailing justification. Laws that discriminate on the basis of immigration status are subject to strict scrutiny, *Graham v. Richardson*, 403 U.S. 365, 372 (1971), unless they fall within the narrow "political-function exception" for laws that limit certain core governmental functions to citizens, *Bernal v. Fainter*, 467 U.S. 216, 220 (1984). The exception requires (1) that the law must not be over- or underinclusive, meaning the roles must genuinely implicate democratic self-governance; and (2) the excluded positions must involve discretionary authority over sovereign functions, such as policymaking, law enforcement, or electoral governance. *Cabell v. Chavez-Salido*, 454 U.S. 432, 439-41 (1982). Neither condition is likely satisfied here. First, the Requirement applies in a patchwork fashion (and does not apply to State corrections officers). Second, the corrections officers at issue do not wield the sort of discretionary authority justifying the exception. The Requirement likely does not survive strict scrutiny. Indeed, even if the law were subject to rational basis review, it still likely violates the Equal Protection Clause because Defendants have articulated no legitimate purpose for the lines drawn by the Immigration Status Requirement. *See Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1065 (9th Cir. 2014) (*"ADAC I"*).

b. Plaintiffs have demonstrated a strong likelihood that the Immigration Status Requirement violates the Privileges and Immunities Clause of the Washington Constitution. Although the Clause speaks of citizens and corporations, it "applies to resident aliens as well as citizens." *Simpson v.*

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 6

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*State*, 26 Wash. App. 687, 692, 615 P.2d 1297, 1300 (1980). Under the Clause, courts assess whether the law involves a privilege or immunity, and whether the legislature had a reasonable ground for granting that privilege or immunity. *Ockletree v. Franciscan Health Sys.*, 179 Wash. 2d 769, 776 (2014). Because it effectively bars certain persons from employment, the Immigration Status Requirement likely implicates a privilege, namely the right to "carry on business" in Washington, which is a "long-recognized privilege under [the Washington] constitution." *Ass'n of Wash. Spirits & Wine Distr v. Wash. State Liquor Control Bd.*, 182 Wash. 2d 342, 360 (2015). The legislature also likely lacked a reasonable ground for granting the privilege to the limited set of persons that it did by enacting the Immigration Status Requirement because Defendants have identified no legitimate purpose served by the provision. *Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 196 Wash. 2d 506, 523 (2020) ("The 'reasonable ground' test is more exacting than rational basis review.").

  c. Plaintiffs have demonstrated a strong likelihood that the Immigration Status Requirement is preempted by federal law. "The States enjoy no power with respect to the classification of aliens" because the power to treat categories of noncitizens differently is "committed to the political branches of the Federal Government." *Plyler v. Doe*, 457 U.S. 202, 225 (1982) (quotation marks and citations omitted). The Immigration Status Requirement at issue here encroaches on—and thus must give way to—federal law. Under the Immigration and Nationality Act, the federal

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 7

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

government distinguishes between noncitizens who are authorized to work in the U.S. and those who are not. In disregard of this distinction, the Requirement uses its "own definition" of work authorization and the roles to which it applies, distinguishing between citizens, LPRs, and DACA recipients (who are eligible to serve as corrections officers) and all other noncitizens (who are ineligible even though some can lawfully work in the United States). *Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957, 973 (9th Cir. 2014) ("*ADAC II*"). The Requirement thus imposes an "auxiliary burden[]" on certain noncitizens that was not contemplated by Congress, *Graham v. Richardson*, 403 U.S. 365, 369 (1971), and is therefore likely "preempted by the exclusive authority of the federal government" to "classify noncitizens," *ADAC II*, 855 F.3d at 975.

    d.    Plaintiffs have demonstrated a strong likelihood that the Immigration Status Requirement is fundamentally at odds with the WLAD because it mandates that local governments, including the County, discriminate in hiring corrections officers based solely on applicants' immigration status. Where two statutes are incompatible, one must yield to the other. Here, the WLAD prevails because it reflects a constitutional prohibition on discrimination and "embodies a public policy of the highest priority." *Xieng v. Peoples Nat. Bank of Wash.*, 120 Wash. 2d 512, 521 (1993). Further, although the WLAD allows differential treatment where authorized by federal or state law, regulation, or contract, RCW 49.60.020, that exception does not apply here because the Immigration Status

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 8

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Requirement likely violates both the United States and Washington Constitutions.

4. Plaintiffs will suffer irreparable harm if the Immigration Status Requirement is not enjoined. CJTC has informed DAJD that the corrections officers must either voluntarily surrender their certifications or face formal administrative enforcement actions. That is a Hobson's choice, under which the Impacted COs are effectively forced to surrender their certifications. *See Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009) (being forced into a "Hobson's choice" is irreparable harm). CJTC's communications and actions, moreover, demonstrate its intent to act immediately. Six of the Impacted COs have already been prevented from completing training, including four who were sent home midway through the program. Larsen Decl. ¶ 17; Nance Decl. ¶ 16. These ongoing enforcement measures have immediate and irreversible effects on the affected officers, their employment, and the County's ability to staff jails safely and lawfully. *See e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024) (deprivation of constitutional rights constitutes irreparable harm). And the loss of the Impacted COs will impede DAJD's ability to maintain safe and humane jail operations. Their removal would reverse recent progress addressing chronic staffing shortages. Since the COVID-19 pandemic, corrections officers nationwide have faced shortages, and DAJD was forced to curtail visitation and programming, restricted movement, and rely on extensive overtime, heightening safety concerns and staff stress. Nance Dec. ¶ 6; Eltayeb Dec. ¶ 9. Although DAJD has reduced vacancies by half since 2022, losing these officers would likely require renewed cutbacks and heavy overtime, worsening turnover and costs. Larsen Dec. ¶ 24. DAJD would also lose corrections officers with crucial cultural and linguistic skills, Eltayeb Dec. ¶ 12, and incur significant recruiting and training costs, Nance Dec. ¶ 10; Larsen Dec. ¶¶

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 9

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

11, 15, 23; *see City & Cnty. of San Francisco v. Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. 2025) (finding "irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve"). Officer Ntabo's individual harm is equally serious. Officer Ntabo supports his family of five and depends on his position for income, tuition, and health insurance. Ntabo Dec. ¶¶ 6–10; *see ADAC I*, 757 F.3d at 1068 (a plaintiff's loss of opportunity to pursue a chosen profession constitutes irreparable harm). Enforcement of the Requirement threatens his livelihood and family stability, as well as that of other Impacted COs. Eltayeb Decl. ¶ 11; Larsen Decl. ¶¶ 16–22.

**5.** The balance of equities and public interest factors, which merge here, also favor preliminary relief. Both the public and the County have a compelling interest in ensuring that DAJD operates lawfully and safely. *See ADAC I*, 757 F.3d at 1069 (establishing a likelihood that a policy violates the U.S. Constitution also "establish[es] that both the public interest and the balance of the equities favor a preliminary injunction"). There is little to no indication that a preliminary injunction would harm the public: the COs are lawfully present, fully vetted, and continue to perform their duties without endangering the public. Larsen Decl. ¶¶ 17, 26. In contrast, the sudden loss of the Impacted COs would have serious "operational consequences for the adult detention facilities and the residents and staff within the facilities," jeopardizing the safety of inmates, officers, and the public alike. Eltayeb Decl. ¶ 8.

### III.    ORDER

It is now, therefore, ORDERED as follows:

1. Plaintiffs' Motion for Preliminary Injunction is GRANTED;

2. The State and CJTC and their officers, agents, servants, employees, and attorneys,

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 10

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and any other persons who are in active concert or participation with them, are enjoined from enforcing the Immigration Status Requirement, including but not limited to relying on the Requirement (1) in issuing or declining to issue certifications for corrections officers seeking employment from King County, or (2) as a grounds for decertifying or taking any adverse actions against the County, Officer Ntabo, or other County corrections officers based on their immigration status.

Dated this ___ day of _____, 2025.

_____
Honorable Ricardo S. Martinez
United States District Judge

*Presented by:*

PACIFICA LAW GROUP LLP

 *s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946
Kevin Kennedy, WSBA #55687
Eugene Lee, WSBA # 61190

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
T: 206-245-1700
F: 206-245-1750
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com
Kevin.Kennedy@PacificaLawGroup.com
Eugene.Lee@PacificaLawGroup.com

*Attorneys for Plaintiffs*

[PROPOSED] ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 11

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750